# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

REBECCA TROMBLEE WALSH,

                        Plaintiff,

    v.                                                  1:13-CV-603 (GTS/ATB)

CAROLYN W. COLVIN,

                        Defendant.

---

STUART A. KAUFMAN, ESQ., for Plaintiff
SANDRA M. GROSSFELD, ESQ., Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On June 1, 2010, plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") benefits, alleging disability beginning May 25, 2010. (Administrative Transcript ("Tr.") 133-39). The application was initially denied on August 13, 2010. (Tr. 84-87). Administrative Law Judge ("ALJ") Michelle Marcus conducted a hearing on December 20, 2011, at which the plaintiff testified. (Tr. 34-74). On March 2, 2012, the ALJ issued a decision denying plaintiff's application for benefits. (Tr. 18-33). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 2, 2012. (Tr. 1-6).

## II. FACTS

Plaintiff's counsel has included a detailed summary of the facts in his brief. (Pl. Br. at 2-10). Defendant's counsel has incorporated the ALJ's summary into his brief. (Def. Br. at 1). This court will also incorporate the facts as stated by the ALJ and both counsel, with any exceptions as noted in the discussion below.

## III. ALJ's DECISION

The ALJ determined that plaintiff met the insured status requirement for purposes of her DIB application through December 31, 2014, and had not engaged in substantial gainful activity since May 25, 2010–the alleged onset date.[1] (Tr. 23). The ALJ found plaintiff suffered from the severe impairments of fibromyalgia and degenerative disc disease. (Tr. 23). She found, however, that plaintiff's chronic asthma, allergies, celiac disease, acid reflux, and emotional issues were not severe impairments as they would not have more than a minimal effect on plaintiff's ability to work. (Tr. 23-24). She further found plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 24).

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to "perform light work . . . except she requires positional changes that can be made during normal break times and can perform only occasional[] bending." (Tr. 24). In reaching her RFC findings, the ALJ concluded that the plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms–that she can only sit for thirty minutes without pain–were "not credible" to the extent they were

---

[1] Although plaintiff did work after the alleged onset date, her work activity did not rise to the level of substantial gainful activity. (Tr. 23).

2

inconsistent with the RFC determination. (Tr. 24-25).

The ALJ discussed the results of a lumbar spine x-ray conducted in December 2009 noting that despite slight degenerative changes at L2-3, disc spaces were otherwise preserved. (Tr. 25). An updated lumbar MRI in 2011 indicated mild to moderate degenerative changes, most prominent at the L2-3 level, with multilevel mild foraminal encroachment, but no significant spinal canal stenosis. (Tr. 26). She further discussed the findings of J. Michael Nelligan, PA, who noted that fourteen of eighteen fibromyalgia tender points were painful, but plaintiff had full range of motion of the cervical spine, shoulders, elbows, wrists, fingers, hips, ankles, knees, toes, and lumbosacral spine with no tender or synovitic joints. She also noted that PA Nelligan recommended exercise, improved sleep hygiene, and medication. (Tr. 25). Similarly, during a consultative exam in August 2011, despite a slight limp at first, plaintiff ambulated with a normal gait, was able to independently get on and off the examination table, had normal reflexes and sensation, and full range of motion of the cervical spine as well as in the shoulders, elbows, wrists, hips, knees, and ankles. (Tr. 26). In April 2011, plaintiff reported muscle aches but no muscle weakness, no arthralgias, joint pain, or back pain, and she ambulated normally. (Tr. 25).

The ALJ also noted that in October 2010, plaintiff reported that dietary changes helped control her fibromyalgia symptoms. (Tr. 25). In July 2011, plaintiff reported that acupuncture treatments were helpful in treating her pain. (Tr. 26). The ALJ found it significant that plaintiff testified that she drove for approximately 1.5 hours to attend her hearing; that she provides home care two days a week for generally twenty hours per week, preparing meals, doing laundry and dishes, making the bed, and accompanying her client on walks around the block; that acupuncture treatments and

3

massage therapy are helpful; that she exercises daily; and that although she splits up the work, she is able to vacuum, dust, mop, sweep, cook, clean, and garden; and that she visits friends, occasionally attends church, knits, crochets, and reads motivational books. (Tr. 26).

The ALJ assigned little weight to the opinion of plaintiff's chiropractor, Dean Estramonte, DC. (Tr. 26-27). Estramonte found that plaintiff could sit or stand/walk in combination for less than two hours each in an eight hour workday; sit or stand for no greater than thirty minutes at a time, would require unscheduled breaks and positional changes, and that her symptoms would cause several work-related absences per month. Noting that the treatment notes did not contain musculoskeletal evaluations, the ALJ found that Estramonte's assessment was not supported by the evidence as a whole and appeared contradictory to the plaintiff's testimony regarding her daily living and work schedule. (Tr. 27).

The ALJ also assigned little weight to the opinion of plaintiff's treating provider, Dr. Lehine. (Tr. 27). Dr. Lehine found that plaintiff could lift or carry ten pounds occasionally; would require positional changes every thirty minutes; and could sit or stand and walk in combination for less than two hours each in an eight-hour workday. (Tr. 27). However the ALJ noted that Dr. Lehine also reported that plaintiff's symptoms were treated with nutritional supplements, acupuncture, chiropractic treatments, and massage therapy, which plaintiff found helpful. The ALJ found that Dr. Lehine's assessment was based only on two office visits, and at least in part, on plaintiff's subjective medical history, and that the treatment notes do not indicate symptoms or signs consistent with this assessment or with plaintiff's daily activities and work activity. (Tr. 27).

4

Finally, the ALJ also assigned little weight to consultative examiner Dr. Dooley. (Tr. 27). The ALJ observed that it did not appear that testing specific to the provided diagnoses was performed, yet Dr. Dooley offered the opinion that plaintiff's impairments limit her ability to work. The ALJ found that the assessment was not supported by the clinical evaluation, but instead was based on plaintiff's subjective statements. (Tr. 27).

The ALJ then found plaintiff was able to perform her past relevant work as a receptionist. (Tr. 28). The ALJ concluded that claimant "has not been under a disability . . . from May 25, 2010, through the date of this decision." (Tr. 28).

## IV. **GENERALLY APPLICABLE LAW**

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

5

404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

B. **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697

6

F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

V.  **ISSUES IN CONTENTION**

Plaintiff advances the following arguments:

(1) The ALJ's erred by failing to give controlling weight to the opinion of plaintiff's treating providers. (Pl.'s Br. at 1, 11-18).

(2) The ALJ's credibility determination and RFC determination are not

7

> supported by substantial evidence because the ALJ erred in failing to properly consider the entire record. (Pl.'s Br. at 1, 18-23).

(3) The ALJ erred in finding plaintiff could perform her former sedentary receptionist position. (Pl.'s Br. at 1, 24-25).

This court agrees with the plaintiff that the ALJ erred in his RFC determination and that substantial evidence does not support her determination, which taints the finding that plaintiff could perform her past relevant sedentary work and the ultimate finding that plaintiff was not disabled. Accordingly, the court recommends that this case be remanded for further administrative proceedings to clarify the RFC determination.

## VI. RFC/TREATING PHYSICIAN/CREDIBILITY

### A. Legal Standards

#### 1. RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As noted, the ALJ found that plaintiff had the RFC to perform light work, with the additional restrictions that she requires positional changes that can be made during normal break times and can perform only occasional bending. The full range of light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). Additionally, if someone can do light work, they can also do sedentary work, unless there are additional limiting factors such as an inability to sit for long periods of time. *Id.* Sitting in a sedentary position would generally total about six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3. As noted above, the ALJ found that plaintiff would be able to perform

9

her past relevant work as a receptionist, which is classified as a sedentary position.

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that the report is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical

evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### B. Evaluation of Medical Evidence

#### 1. Summary of Relevant Evidence

Plaintiff has been diagnosed with fibromyalgia, and doctors have noted slight degenerative changes in her lumbar spine. (Tr. 251-52, 421, 254-56). A lumbar spine MRI conducted December 28, 2009 showed slight degenerative changes. (Tr. 251-52). An MRI conducted on December 2, 2011 showed mild to moderate lumbar spine

degenerative changes, but no significant spinal canal stenosis. On May 25, 2010, Michael Nelligan, PA examined plaintiff, noting her long history of musculoskeletal pain, but also noted that she does not take anything for pain on a regular basis or intermittently. (Tr. 254-56). During the exam, he observed a full range of motion, with no tender or synovitic joints. He noted, however, pain with palpation, with significant fibromyalgia tender points reported as painful, suggesting a diagnosis of fibromyalgia. He recommended continuing exercise for fibromyalgia, and treatment of pain as needed. (*Id.*). PA Nelligan did not complete a RFC questionnaire, or specifically address plaintiff's ability to sit, stand, or walk.

Plaintiff's chiropractor, Dr. Estramonte did complete an RFC questionnaire. Dr. Estramonte opined that plaintiff was unable to sit or stand at any one time for more than 20-30 minutes; and that in an eight-hour work day she could sit/stand/walk less than two hours total, and would need a break every one to two hours. (Tr. 353). Plaintiff's treating provider, Dr. Lehine (who had only seen plaintiff twice prior to completing the RFC questionnaire), similarly opined that plaintiff was unable to sit for more than 30 minutes at a time, or stand for more than 30 minutes at a time and could sit/stand/walk less than two hours total. (Tr. 328-31). Dr. Dooley, who completed a consultative exam, noted that plaintiff was able to get on and off the examination table independently, and that despite a slight limp at first, she ambulated with a normal non-antalgic gait though her hips bothered her. Dr. Dooley also observed that plaintiff had full range of motion in her cervical spine. Dr. Dooley opined that plaintiff was limited to sitting for 30 minutes without interruption, standing for 30-40, and walking for 45

minutes. Dr. Dooley additionally opined that plaintiff could sit for four hours total per work day, stand for two, and walk for two. (Tr. 336).

At the hearing, plaintiff explained that she provides home care two days a week, generally for a total of 20 hours. (Tr. 50-51). Plaintiff fixes meals, washes small loads of laundry, makes the bed, helps her client into bed using a Hoyer lift, accompanies her on casual walks around the block, and does "little light things that she needs done." (Tr. 51, 52, 53, 66). According to plaintiff, she is able to get up and down and walk around, and move around when she needs to while performing this work. (Tr. 50-51, 65). When plaintiff is not working, she testified that she tries to break up her housework so that she can still perform these jobs. (Tr. 60). She has raised beds so that she can plant her own fruits and vegetables. (Tr. 62). Plaintiff also visits friends once a week and visits "for a little bit." (Tr. 69). She also goes out with her husband to socialize once a weekend. (Tr. 69-70).

2. **Analysis**

The ALJ stated that she assigned the opinions of Estramonte, Lehine, and Dooley "little" weight. (Tr. 26-27). The ALJ found that Dr. Estramonte's assessment was "not supported by the evidence as a whole and appears contradictory to the claimant[']s testimony which is indicative of comparatively vigorous activities of daily living and work schedule." With respect to Dr. Lehine's report, the ALJ noted that she only treated plaintiff twice before completing the RFC assessment, that her assessment was based in part on the claimant's subjective medical history, and that the reports do not indicate symptoms or signs consistent with the RFC assessment. The

13

ALJ again concluded that the assessment was not "consistent with the claimant's activities of daily living along with her current work activity." Likewise, the ALJ concluded that Dr. Dooley's assessment was based on subjective statements and not supported by the clinical evaluation. The ALJ concluded that despite plaintiff's fibromyalgia and degenerative disc disease with symptoms of pain, the "record shows that she is capable of normal activities of daily living," and that her ongoing treatments of acupuncture and massage therapy were helpful. (Tr. 27).

The ALJ appears to have improperly substituted her opinion for that of a medical expert. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion)). It is unclear if or how the ALJ determined that plaintiff could sit for the length of time required for performing her past sedentary work as a receptionist. Indeed, all of the RFC assessments included in the record find that plaintiff would not be able to sit for six hours in an eight hour day. None of plaintiff's described daily activities demonstrated an ability to sit for six hours. *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[W]hile an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him."). Moreover, "[i]f the RFC assessment

14

conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

The ALJ appears to have relied primarily on plaintiff's daily activities, stating that plaintiff

> drove for approximately 1 ½ hours to attend her hearing. She testified that she works two days per week for a total of generally twenty or more per week as a home care provider for an elderly person. She testified that she performs tasks that include assisting her client in an[d] out of bed with use of a Hoyer lift, and that her duties include preparing meals, doing laundry and dishes, and making her client's bed. She testified that she accompanies her client on walks around the block. She testified that she sleeps very well and attends regular acupuncture treatments and massage therapy, which she reported are helpful. The claimant testified that she exercises daily and follows a program in which she walks in place and performs yoga for half an hour each per day. She testified that she splits up her housework but is able to vacuum, dust, mop, sweep, cook , and clean. She testified that she is an active gardener and raises a variety of vegetables, and is able to plant, water, weed, pick, and can her home-raised produce.

(Tr. 26). However, none of these asserted daily activities demonstrate that plaintiff has the ability to sit for the amount of time required by a sedentary position such as her prior position as a receptionist. With respect to the hour and a half drive to the hearing, the ALJ did not ask plaintiff for any details regarding this trip. The ALJ also concluded that plaintiff's work schedule and activities at home contradicted the medical evidence. However, plaintiff testified that she splits up the cleaning at home, and testified regarding her ability to move around while performing her home-care duties. (Tr. 60, 65). Indeed, plaintiff's testimony regarding her inability to sit for

15

greater than 30 minutes was entirely consistent with the RFC assessments provided. (Tr. 49-50 (explaining that she cannot sit for over half an hour without pain)). The ALJ cannot "cherry pick" only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence. *See, e.g., Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Rep't-Rec.), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

In sum, the court concludes that the ALJ has not sufficiently explained the evidence relied upon to support her decision and has selectively relied on plaintiff's daily activities supporting her RFC determination while ignoring contrary medical opinions. On remand, the Commissioner should properly address the totality of the medical opinion and other evidence and clarify the evidence that the ALJ relied on to support her conclusion that plaintiff can sit for the duration of time required to perform light or sedentary work.

## VII. STEP FOUR

### A. Legal Standards

At step four of the analysis, the ALJ must address a claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed in the past 15 years and that constituted substantial gainful activity. 20 C.F.R. § 404.1565(a), (b). If the claimant can return to his past relevant work, the

16

Commissioner will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Where substantial evidence supports the ALJ's conclusions as to whether plaintiff's RFC allows plaintiff to perform his past relevant work, it is unnecessary to remand the case for further development of the record. *See Stenoski v. Comm'r of Social Security*, 7:07-CV-552, 2010 WL 985367, at *6 (N.D.N.Y. Mar. 16, 2010). Plaintiff "has the burden to show an inability to return to h[is] previous specific job *and* an inability to perform h[is] past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citation and emphasis omitted). This determination requires consideration of: 1) an individual's statements as to which past work requirements can no longer be met and the reason(s) for his inability to meet those requirements; 2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and 3) in some cases, supplementary or corroborative information from other sources such as the Dictionary of Occupational Titles ("DOT") on the requirements of the work as generally performed in the economy. *Speruggia v. Astrue* No. 05-CV-3532, 2008 WL 818004, at *12-13 (E.D.N.Y. Mar. 26, 2008).

### B. Analysis

The ALJ's errors in reaching his RFC determination also tainted his analysis at step four of the sequential disability analysis. Moreover, even if the ALJ's RFC determination, that plaintiff could perform **light** work with a few additional restrictions, had been supported by substantial evidence, the ALJ's finding that plaintiff could perform her past, relevant **sedentary** work was not supported by

17

substantial evidence.

Someone who can do light work can also do sedentary work **unless** there are additional limiting factors such as an inability to sit for long periods of time that are inconsistent with sedentary work. The ALJ recognized that plaintiff's past position as a receptionist was sedentary work, but did not address whether the receptionist position, either as defined by the DOT or as performed by the plaintiff, had any different requirements with respect to sitting than typical sedentary work. In order to support his finding that plaintiff could perform her past relevant work, the ALJ should have documented plaintiff's ability to sit for six hours during an eight-hour workday, or explained why the sitting requirements for the receptionist position were different. The ALJ made no such explicit findings and, as noted above, there was not substantial evidence supporting a finding that plaintiff could sit for six hours during a workday. Accordingly, this court concludes that the ALJ's erred in his Step Four analysis independently of any errors committed in his RFC determination.

## VIII.  NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). The plaintiff does not contend, and this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of plaintiff's residual functional capacity and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 12, 2014

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge